## STATE v. CHERAW AND DARLINGTON R. R.

1. TAXES—ASSESSMENT.—An official assessment or lawful valuation of property for taxation is essential to constitute a legal liability to pay taxes.

2. IBID.—IBID.—The act of assembly (22 Stat., 453,) provides for collection of past due taxes by suit, but cannot be construed to authorize an assessment for taxation in the action brought to recover taxes past due.

3. PLEADINGS—DEMURRER—LEGAL CONCLUSIONS.—Allegations of conclusions of law raise no issue; and are not admitted on demurrer. Certain allegations held to be legal conclusions.

4. JURISDICTION—TAXES.—THE CIRCUIT COURT, under 22 Stat., 453, has jurisdiction of a suit to collect past due taxes.

Before GAGE, J., Chesterfield, April, 1898.　　Reversed.

Action by the State against the Cheraw and Darlington Railroad Company, on the following complaint:

The complaint of the plaintiff in this case shows:

I. That the defendant is a corporation chartered by the General Assembly of this State, and running a railroad extending from the town of Florence, in Florence County, to the town of Cheraw, in Chesterfield County; that there are forty miles of said road, and valuing its roadbed, real estate, track, depots, water-tanks, engines, cars and tools and all equipments of every kind, the said road is worth $12,000 per mile.

II. That thirteen miles of said road, together with valuable depots and real estate owned by said company, lie in Chesterfield County, and the said property in said county is worth $156,000, and was worth that sum on the 1st day of January, 1896.

III. That the General Assembly by statute levied a tax for the fiscal year beginning November 1st, 1895, of 4½ mills on the dollar for general State purposes, and a tax of 3 mills on the dollar for the public schools, and a tax of 8½ mills on the dollar was levied for general county purposes for Chesterfield County, making in all a tax of 16 mills on every dollar's

worth of taxable property in the county of Chesterfield, and the same became a lien on the property of the defendant situate in said county. That the sum of $2,496 was thus levied upon the said property of the defendant, and the same was due and payable not later than December 31, 1896; and if not paid then, a penalty of 15 per cent. on the same was levied by the statute of said State.

IV. That defendant refused to pay the same, or to make return of its property for taxation, under the claim that the said property was exempt from taxation by a statute of the State of South Carolina, which plaintiff denies, and there is now due from the defendant the sum of $2,870.40 for said taxes and penalties.

V. That by an act of the General Assembly of South Carolina, approved March 2, 1897, entitled "An act to provide for the collection of past due railroad taxes, and for the distribution of the same," the State of South Carolina was authorized to sue for and collect all of said taxes in one action.

(Then follow 47 similar causes of action, except as to the mileage in the respective counties, the dates, the levies and the amounts due for taxes and penalties, and in the county of Darlington there was a "special" levy for school purposes for several years, which was set forth in the causes of action for said year. There are twenty years claimed for Chesterfield, eight years on five miles of track are claimed for Florence, eight years on twenty-two miles for Darlington and twelve years on twenty-seven miles for Darlington.)

Wherefore, plaintiff demands judgment for the various amounts alleged in the various causes of action against the defendant, and for costs.

To this complaint the defendant interposed the following oral demurrer:

The defendant demurs generally to the complaint and to each cause of action therein on the following grounds:

I. That the Court can take no jurisdiction of this action,

inasmuch as the act of 2d March, 1897, which purports to give the attorney general the right to bring the action at his discretion, for the purpose of testing the right of such railroads to exemption from taxation as he should see fit to bring into Court, and to claim judgment, as for past due taxes, in such sum as he may determine (which said act is the sole source of the authority for this action), is void, inasmuch as (a) it is special legislation; and (b) it violates article 1, section 5, of the Constitution of the State of South Carolina, by depriving defendant of property without due process of law, and denying to it the equal protection of the laws; and violates article 10, section 3, of the Constitution, by permitting judgment as for past due taxes to be entered against the defendant, without naming the defendant or specifying the amount for which action shall be brought, and by thus imposing a tax not levied in pursuance of law stating the object of said tax; and violates article 1, section 14, in conferring on the attorney general, an officer of the judicial department, and upon the Court, the right to determine the amount of taxes to be imposed on this defendant, and to collect the same; the former being a function of the legislative and the latter of the executive department of the State government.

II. Upon the ground that the complaint fails to state facts sufficient to constitute a cause of action, in that it does not show how the alleged tax became a lien on the property of the defendant, as alleged in paragraph II. of the complaint; and it fails to show that the property of the defendant was returned for taxation as required by sections 234 and 235 of the Revised Statutes of 1893; section 180 of the Revised Statutes of 1882, and sections 14 and 15 of the act of 1874; or that the comptroller general notified the board of equalization of the return of defendant filed in his office, or that the board of equalization proceded under section 20 of the act of 1874, section 186 of the Revised Statutes of 1882, section 240, Revised Statutes of 1893; or that the comptroller general certified the return of the railroad property

to the county auditor of each county, or that the county auditor charged this defendant's property for taxation under section 21, act of 1874, section 187 of Revised Statutes of 1882, and section 240 of the Revised Statutes of 1893; and fails to show that the defendant company failed to make return of its property for taxation; and that upon such failure the said board of equalization proceeded under section 22 of the act of 1874, section 188 of the Revised Statutes of 1882, and section 242 of the Revised Statutes of 1893, to ascertain and apportion the same; or that the comptroller general certified the same to the county auditors, or that the county auditors placed the same on their duplicates for taxation, and that said property was ever legally assessed; and fails to show that the name of the said defendant appears on the auditor's annual list of taxpayers, required to be made by sections 52, act of 1874, 234 of Revised Statutes of 1882, and 285 Revised Statutes of 1893; and fails to show that the comptroller general in that year before 15th October (or the time fixed by statute) gave notice to the county auditor of the rates per centum authorized by law to be levied for the various State purposes required by sections 260, Revised Statutes 1882, 286 Revised Statutes of 1893; or that the said rates were levied by the county auditor on the property of the defendant as taxable property of the county, charged on the duplicate with the taxes required to be levied and collected for other purposes, as required by section 66 of the act of 1874; or in the years preceding 1893, the county commissioners assessed the taxes for county purposes, and made out and delivered to the country treasurer with warrant to collect the tax bill for county purposes, as required by section 616 Revised Statutes of 1882 and the act of 1875; or that the county commissioners made the report to be transmitted to the General Assembly, showing the amount of taxes levied and assessed, as required by section 319, Revised Statutes 1882; and fails to show that the property of the defendant was listed or scheduled as taxable property of the county on the duplicate of the county auditor, as required by section 67,

act of 1874; 235 Revised Statutes of 1882, 287 Revised Stat-
utes of 1893; and fails to show that the county auditor, after
receiving from the comptroller general and from such other
officers and authorities as were legally empowered to deter-
mine the amount of taxes to be levied for the current year,
proceeded to determine the sums to be levied on each tract or
lot of real property, and upon the amounts of personal prop-
erty in the name of the defendant, as required by section 235,
Revised Statutes 1882, 287 Revised Statutes of 1893, 67 of
act of 1874; and fails to show that the county auditor en-
tered on the tax duplicate the taxes opposite the name of the
defendant, as required by section 70, act of 1874, 237, Re-
vised Statutes of 1882, and 289, Revised Statutes of 1893;
and fails to show that the value of the defendant's property
was included in the aggregate value of the taxable property,
that the taxes on defendant's property were included in the
total amount of taxes assessed thereon for said years, ap-
pearing on the annual abstract of the duplicate of said
county, required to be transmitted by mail by the county
auditor to the comptroller general, under section 81, act of
1874, 248, Revised Statutes of 1882, 301, Revised Statutes
of 1893; and fails to show that the name of the defendant
appears on the delinquent list or recorded on the book of the
auditor, as required by sections 82, Statutes of 1874, 276,
Revised Statutes of 1882, and 333, Revised Statutes of
1893; and fails to show that said taxes became payable at
any time as required by law, after their assessment, as pre-
scribed in sections 85 and 87, Statutes of 1874; 266, Revised
Statutes of 1882, and 324, Revised Statutes of 1893; and
fails to show that the personal property of defendant became
liable to distress and sale under section 90, act of 1874, 280,
Revised Statutes of 1882, 336, Revised Statutes of 1893; or
that it was ever advertised for sale, or that any chattel tax
was unpaid or returned delinquent, or that the county trea-
surer either distrained the property for the payment thereof,
or sued to recover the same by action at law or otherwise,
under section 97, Statutes 1874; 281, Revised Statutes of

1882, 337, Revised Statutes of 1893; and fails to show that the said taxes were legally assessed and ever came to be considered or held as a debt payable to the State by the defendant against whom the same were charged, or that said taxes so became a lien, under section 127, act of 1874; 170, Revised Statutes of 1882, 200, Revised Statutes of 1893; and fails to allege that the property of the defendant was taxable property. (b) Paragraph III. of the complaint avers that the General Assembly levied a tax for the fiscal year        on every dollar's worth of the taxable property in the county of        and the same became a lien on the property of defendant in said county, but fails to set forth or allege that the property of the defendant was taxable property. (c) Paragraph III. of the complaint alleges that        dollars were thus levied on the property of the defendant, without stating how  or by what process said amount was ascertained or reached, or by what authority said specific sum was levied, laid or imposed as a tax on the property of or charged against the defendant, or by what official, or at what time, or in what manner the same was levied. (d) Paragraph III. of the complaint alleges that said sum was due and payable not later than        , but fails to show how it became so due and payable. (e) Paragraph IV. of the complaint avers that the defendant refused to pay the same, but fails to allege any fact or facts showing that the demand for payment of the said sum or any sum for taxes was ever made on defendant by the State of South Carolina, or its authorized officers, or anything showing when, how or to whom the defendant so refused payment, or that defendant ever became legally liable to pay the said sum, or showing that said tax had ever been charged against or chargeable against the defendant. (f) Paragraph IV. of the complaint alleges that the defendant refused to make return of its property for taxation, but fails to allege at what time or in what manner, or to what officer, defendant refused to make return of its property for taxaton, and fails to state whether said refusal, under the claim that said property was

exempt from taxation, was or was not acquiesced in by the State, or that said claim was then or at any other time denied by the State.    (g) ˙Paragraph IV. alleges that there is now due from defendant the sum of          dollars for said taxes and penalties, but fails to show facts showing how or when they became so due.    (h) Paragraph V. alleges that by an act of the General Assembly of South Carolina, approved March 2, 1897, entitled "An act to provide for the collection of past due railroad taxes and for the distribution of the same," the State of South Carolina was authorized to sue for and collect all of said taxes in one action; but it fails to allege that said taxes or any part thereof were or ever have been past due railroad taxes, or taxes of defendant railroad · at any time due by it, or at any time past due taxes.

From judgment overruling demurrer, defendant appeals.

*Messrs. Theo. G. Barker* and *J. T. Barron,* for appellant, cite: *Legislature cannot make special law for special cases, and order Court to enforce it:* 55 Am. Dec., 499.  *Retrospective laws and statutes are unconstitutional:* 11 Pa. St. R., 489; 63 Ib., 47; 3 N. H., 473; Con. 1895, sec. 14, art. I.; 5 Pa. St., 145; 3 Scammon, 238; 19 Ill., 382; 1 N. H., 199; Con. 1895, art. III., sec. 11; Con. of U. S., art. X.; art.· XIV., sec. 1; Con. of 1895, art I., sec. 5.  *Taxation:* Con. 1895, sec. 6, art. I.; sec. 29, art. III.; art. X., secs. 1, 2, 3 and 13; 13 S. E. R., 578; 12 S. E. R., 122; 71 Am. Dec., 776; 40 Am. Dec., 146.  *This not a curative statute:* 8 Pa. St., 169; 14 Id., 404; 56 Id., 374; 13 Serg. & R., 360; 1 Watts & S., 310; 26 Pa. St., 432; 57 Id., 13; 25 Cal., 300; 56 Id., 508; 57 Id., 153; 17 Mich., 218; 96 N. Y., 378; 27 Ohio St., 577; 25 Wis., 490; 51 Cal., 45.  *What is a tax?* 4 S. C., 430; Con. 1895, art. X., secs. 2, 10; acts of 1874, p. 431, secs. 66, 68.  *That a tax became a lien is a mere conclusion of law:* 54 N. Y., 276; 23 Barb., 575.  *Instances of conclusions of law pleaded:* 16 N. Y., 297; 19 N. Y., 231; 7 N. Y., 493; 2 E. D. Smith, 134; 16 Barb., 89; 31 Wall., 437; 44

Cal., 264; 82 Fed. R., 866; 3 Pa. St., 714. *None of the essential facts constituting the delict can be implied in favor of the pleader:* 12 N. Y., 190; 85 Am. Dec., 97; 89 Am. Dec., 773; 4 S. C., 430; 18 S. C., 471; 5 Landf., 557; 18 S. C., 469; 5 S. C., 5; 33 S. C., 216; 35 S. C., 307; 3 Met., 132; 11 B. Mon., 185; 48 S. C., 547; 7 N. Y., 493.

*Mr. W. A. Barber, attorney general, Messrs. Stevenson & Matheson* and *E. J. Kennedy,* for Chesterfield County; *J. J. Ward,* for Darlington County, and *Woods & Shipp,* for Florence County, contra. The secónd cite: *First exception is not according to Rule V. of this Court:* 24 S. C., 280; 19 S. C., 543; 14 S. C., 178, 104. *Sufficient facts are averred as to the levy:* 5 S. C., 90; 5 Rich. Eq., 180. *Tax was levied by statute:* Rev. Stat., 234, 242, acts 1896, p. 255; 19 Wall., 277; 99 U. S., 229. *What are allegations of legal conclusions?* 18 S. C., 471; 33 S. C., 217; 28 S. C., 396; 34 S. C., 62; 35 S. C., 307. *The legislature should have the right to assess this class of railroad property claiming exemption, first, as a penalty for defaulting:* 2 Bay, 250; 21 Stat., 86; 22 Stat., 255, 727. *Second, because all in like plight are treated the same way:* Con. 1868, art. I., sec. 12; 14th Amend. Con. U. S.; 18 Sup. Ct. R., 594; 115 U. S., 321; 165 U. S., 150; 18 Sup. Ct., 925; 167 U. S., 461; 24 S. C., 61; 27 S. C., 385; Con. 1895, art. IX., sec. 14, and art. X., sec. 1; 4 S. C., 454; 142 U. S., 255; 18 L. R. A., 729; 18 Sup. Ct. R., 807; 17 Id., 305; 134 U. S., 594; 113 U. S., 32, 709; 115 U. S., 523; 127 U. S., 209; 129 U. S., 32; 18 Sup. Ct. R., 583, 520. *In tax matters, if defendant is heard at some stage in proceeding, his property is not taken without due process, &c.:* 96 U. S., 97; 115 U. S., 321; 111 U. S., 701; 1 L. R. A., 696; 18 Id., 729; 18 Sup. Ct. R., 445, 966; 122 U. S., 154. *Citizen in the Constitution does not include corporation:* 8 Wall., 168; 10 Wall., 410; 125 U. S., 181. *Valuing property is a judicial act:* 111 U. S., 701; 19 L. R. A., 485; 11 L.

R. A., 817. *Nothing in contention that no object was speci-*
*fied by act of 1897:* 11 S. C., 458.

The third cites: *Burden is on defendant to establish uncon-*
*stitutionality of act:* 15 S. C., 592; 16 S. C., 35; 19 Wall.,
673; 42 S. C., 231. *A government may sue for and collect*
*taxes notwithstanding other modes of collection:* 13 Pet.,
486; 19 Wall., 229; 9 Otto, 229. *Act of 1897 does not de-*
*prive defendant of due process of law, &c.:* 29 sec. Magna
Charta; art. IX., sec. 2, Con. 1790; sec. 14, art. I., Con.
1868; 5 and 14 Amend. Con. U. S.; 1 Bay., 390; 1 Brev.,
491; 3 DeS., 478; 2 McC., 59; 4 McC., 543; 1 McM., 503;
2 Spear, 767; 2 Strob., 563; 5 Rich., 115; 13 How., 272; 2
Otto, 480, 90; 4 Otto, 113; 6 Otto, 97. *Nor does it deny*
*the equal protection of the laws:* 8 Wall., 168. *Complaint*
*states a cause of action:* 35 S. C., 309. *And does not allege*
*only legal conclusions:* 33 S. C., 216. *The railroad prop-*
*erty is in not exempted class:* Con. 1868, art. IX., sec. 1, 5;
Con. 1895, art. X., sec, 1, 4; Rev. Stat., 219, 222.

March 10, 1899. The opinion of the Court was deliv-
ered by

MR. JUSTICE JONES. This action was brought under the
statute, approved March 2d, 1897 (22 Stat., 453), entitled
"An act to provide for the collection of past due railroad
taxes, and for the distribution of the same," to recover taxes,
State, county and special, with penalties, alleged to be past
due for each of the twenty fiscal years from 1876 to 1896, in-
clusive, on its railroad property in the territory embraced
within Chesterfield, Darlington and Florence counties. The
complaint attempts to set up forty-eight causes of action,
each cause of action being for the amount alleged to be due
in each of said counties in each fiscal year. So much of the
complaint as is set out in the "Case" showing one of these
alleged causes of action is officially reported herewith. The
case is here on appeal from an order overruling a demurrer
interposed on two grounds: (1) That the Court could take

no jurisdiction. (2) That the complaint does not set forth facts sufficient to constitute a cause of action. For a detailed statement of the grounds of demurrer, see the official report.

As we analyze the case, the crucial question is whether a legal liability to pay an *ad valorem* tax arises from an act of the legislature imposing or authorizing a tax levy on all taxable property, and the mere possession or ownership of taxable property, or is an assessment of such property for taxation by proper officers, an essential prerequisite. In our opinion, an assessment or valuation of property for taxation is essential to constitute a legal liability to pay taxes. The provisions of the Constitution on the subject are: Art. I., sec. 6. "All property subject to taxation shall be taxed *in proportion to its value.*" Art. III., sec. 29. "All taxes upon property, real and personal, shall be laid upon the actual value of the property taxed, *as the same shall be ascertained by an assessment made for the purpose of laying such tax.*" Art. X., sec. 1: "The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe regulations to secure a just *valuation for taxation* of all property, real, personal and possessory * * *.*" These provisions of the Constitution of 1895 were also contained in the Constitution of 1868, art. I., sec. 36, art. II., sec. 33, art. IX., sec. 1. If there had been nothing in the Constitution except the provision first quoted, requiring that all property shall be taxed *in proportion to its value,* by necessary implication, some mode of valuation would be necessary in order to ascertain the certain, proportionate share of the public burden to be borne by each individual taxpayer. But nothing is left for implication on this subject, a valuation of all property for taxation is expressly enjoined. Taxes are not to be laid upon taxable property merely, nor upon its actual value, but upon its actual value *as ascertained by an assessment made for the purpose of laying such tax.* It is thus clear that an official valuation for taxation is essential to constitute a tax, which

must not only be certain in amount, but must be justly apportioned. Other provisions of the Constitution might be cited, for example, sec. 13, art. X., where it is provided: "The General Assembly shall provide for the assessment of all property for taxation; and the State, county, township, school, municipal and all other taxes *shall be levied on the same assessment, &c.*" Pursuant to such provisions of the Constitution, the General Assembly has passed general and standing laws in reference to the assessment and taxation of property, and the idea that an official assessment is prerequisite to constitute a legal tax runs through it all. Under the scheme of our tax laws, the names of all taxpayers and a statement of their taxable property with its value, as assessed by proper officers for taxation, the rate of taxation, and the specific amount due by each, are entered by the county auditor on the book known as the "County Duplicate," and this duplicate when delivered to the county treasurer becomes his warrant for the collection of taxes, subject to certain provisions for additional entries after delivery of the duplicate to the treasurer. Taxes are legally assessed and become a charge against the taxpayer when so entered according to law. In sec. 170, General Statutes 1882, it is provided: "All taxes * * * *legally assessed* shall be considered and held as a debt payable to the State by a party against whom the same *shall be charged;* and *such* taxes * * * and penalties shall be a first lien in all cases whatever upon the property taxed, &c." Touching railroad property, it is assessed by a State board of equalization, and the comptroller general is required to certify such assessment to the county auditor, who is required to charge the respective railroad companies in his county with such valuation. If any railroad company fail to comply with the statute requiring it to make returns of its property for taxation, the State board of equalization is required to assess such property, adding fifty per centum as penalty, and to certify the result to the county auditor, who is required to place the same on his duplicate for taxation. So, then, it appears that not only is an assess-

ment indispensible to an *ad valorem* tax, but it is necessary to an assessment that it be done by the proper officers in the manner provided by law.    When,. therefore, the legislature imposes or provides for the imposition of a tax levy of so many mills on the dollar upon all taxable property, reference is necessarily made to existing laws in relation to the assessment of property for taxation, whether the levy relates to an assessment previously made for such tax, or to an assessment being made or about to be made for such tax; and so it must be held that an act of the legislature, imposing or authorizing a tax levy on all taxable property, means on all taxable property as assessed for taxation by proper officials as provided by law. Whatever may be the moral obligation of every person to bear his due proportion of the public burden, no legal liability to pay is created until that proportion is ascertained by an assessment according to law.    The case of *The Dollar Savings Bank* v. *United States,* 19 Wall., 227, and *King* v. *United States,* 9 Otto, 229, are cited to the effect that an assessment is not essential to a tax.    In the first named case, the Court construed an act of Congress requiring every savings bank to pay a tax of five per cent. on all undistributed earnings made or added during the year to their contingent funds, as imposing a certain sum upon the bank for which the bank became debtor to the government, and that no other assessment than that made by the statute was necessary.    This rule clearly could not apply here, where the constitutional and statutory provisions in relation to assessment of property for taxation exist, which require taxes to be levied on property as assessed for taxation.    The second case cited was rested on the first named, and need not be further noticed.    Much more applicable to the case before us is the case of *People* v. *Weaver,* 10 Otto, 539, where the Court held, quoting the syllabus, that "the provisions of the national bank law that State taxation on the shares of the bank shall not be at a greater rate than is assessed on other

moneyed capital in the hands of individual citizens of the State, has reference to the entire process of assessment, and includes the valuation of. the shares as well as the ratio of per centage charged on such valuation." In this last mentioned case the Court uses this pertinent language: "This *valuation,* then, is part of the *assessment* of taxes. It is a necessary part of every assessment of taxes which is governed by a ratio or per centage. There can be no rate or per centage wthout a valuation." Then the Court proceeds to quote the following: " 'When taxes have been properly decided upon, an assessment may become an indispensable proceeding in the establishment of any individual charge, against either person or property. This is always requisite when the taxes are to be levied in proportion to an estimate either of value, of benefits, or the results of business.' 'An assessment, strictly speaking, is an official estimate of the sums which are to constitute the basis of an apportioment of a tax between the individual subjects of taxation within the district. As the word is more commonly employed, an assessment consists in the two processes *listing* the persons, property, &c., to be taxed, and of estimating the sums which are to be the guide in an apportionment of the tax between them * * *. Taxation by valuation cannot be apportioned without it.' Cooley Tax., 258, 259; Burroughs Tax., p. 198, sec. 94. So, also, Judge Bouvier defines assessment to be determining the value of a man's property or occupation for the purpose of levying a tax. *Determining the share of a tax to be paid by each individual.* Levying a tax. I Bond., 154." See, also, 25 Ency. Law, 199, and cases cited.

In the light of the foregoing, let us ascertain what is the true construction of the statute under which this action is brought. The act both in its title and in the body thereof authorizes an action for *past due taxes.* This undoubtedly must be held to mean delinquent taxes on property assessed for taxation, for only such taxes are past due. In a complaint for such taxes it is essential to allege that the property upon which the taxes are claimed was by

the proper officer assessed for taxation, since, as we have shown, assessment for taxation is one of the basal facts upon which must rest the legal liability to pay the tax. The complaint in this case failed to allege such fact, and defendant's demurrer in this particular should have been sustained. As shown, it is not sufficient to allege the possession or ownership of taxable property with a specified value, for taxes are laid on *assessed* values. There is nothing in the complaint from which we might infer that plaintiff meant or attempted to allege that the property was assessed. The complaint informs that the defendant, claiming to be exempt from taxation, *did not return its property for taxation.* In the absence of any allegation that the State board of equalization, in default of such return, assessed said property, adding fifty per centum as a penalty, the inference is that said property has not been assessed. We cannot assume that the State board of equalization did its duty, and assessed said property in the absence of the slightest reference thereto. We could with equal propriety draw an inference that the board of equalization acquiesced in defendant's claim of exemption, and for this reason did not make the assessment. The fact, too, that the complaint is for taxes alleged to be due on the actual value of defendant's taxable property, instead of for taxes due on the assessed value, with fifty per centum added as a penalty, shows that the pleader did not intend to allege that the defendant's property was assessed for taxation by the State board of equalization in default of a return thereof by the taxpayers. Nor do we think there is anything in paragraph 3 of the complaint to help the plaintiff in this particular. The allegation that the General Assembly "levied a tax" of certain specified rates "on every dollar's worth of taxable property in the county of Chesterfield, and the same became a lien on the property of the defendant situate in said county; that the sum of $2,496 was thus levied upon the said property of defendant, and the same was due and payable not later than December 31, 1896, and if not paid, then a penalty of fifteen per

37—54

cent. on the same was levied by the statute of said State"—states a legal conclusion merely, without stating the basal fact necessary to complete a tax levy, to create a tax lien, to make taxes payable, to authorize a penalty for non-payment of taxes, viz : an assessment of defendant's property for taxation. The allegation of such conclusions of law raises no issue, and under the well established rule are not admitted by a demurrer. As stated in 25 Ency. Law, 320, "The complaint or declaration should show a *prima facie valid* tax, and the property against which and the person upon whom it is a charge. It should show the jurisdiction of the Court over the subject matter, and that the property is delinquent. It need not aver how and by whom the levy and assessment were made;" and again on page 323, "It rests with the plaintiff to show a lawful levy and assessment;" and again on pages 324 and 325, where it is stated that the absence of an assessment is always a good defense. It thus appears that while in a suit to collect taxes, it is not necessary to allege all the probative facts by which a lawful levy and assessment are established, yet it is necessary to allege the levy and assessment. But it is contended that the act of 1897, *supra,* authorizes an assessment of defendant's property for taxation in the proceedings brought to recover past due taxes. The mere statement of the proposition is its refutation. If, as we have seen, an assessment of property for taxation is essential to constitute legal liability for taxes, and if the legal liability of defendant must exist at the *commencement* of the action, how can it be possible to authorize assessment for taxation in the action brought to recover taxes past due? We have no means of ascertaining the intention of said act, but by its language construed in the light of legislative power. We find nothing in the act to warrant a construction that in a suit under it to collect past due taxes, the jury, or the Court and jury trying the cause, are constituted a tribunal to assess defendant's property for taxation. Under this construction of said act it is irrelevant to discuss points argued before us; as, for example, whether

it is competent for the legislature to authorize the assessment of railroad property belonging to companies claiming exemption from taxation, as a separate class, and by a different tribunal from that authorized to assess all other railroad property; or whether said act construed to authorize the jury trying the cause to assess the property of defendant, violates constitutional provisions in reference to "due process of law," "equal protection of the law," &c.

Construing the act as one authorizing a suit for past due taxes there is no doubt the Circuit Court has jurisdiction.

The complaint, however, is demurrable on the ground that it fails to state facts sufficient to constitute a cause of action, in that it fails to state that defendant's property was assessed for taxation in the years for which said taxes are claimed.

The judgment of the Circuit Court is reversed, without prejudice to the right of plaintiff to apply to the Circuit Court for leave to amend the complaint in the particular discussed herein as may be advised.